DECISION AND JUDGMENT ENTRY
{¶ 1} Robert Saxon appeals his conviction by the Highland County Municipal Court for theft in violation of R.C. 2913.02(A)(3). Saxon's appointed counsel advised this Court that she has reviewed the record and can discern no meritorious claims for appeal. Accordingly, she has moved to withdraw as counsel under Anders v. California (1967), 386 U.S. 738,87 S.Ct. 1396, 18 L.Ed.2d 493. After independently reviewing the record, we agree with counsel's assessment that no meritorious claims exist upon which to predicate an appeal. Therefore, we grant counsel's motion to withdraw, find this appeal is wholly frivolous under Anders, and affirm the judgment of the trial court.
 {¶ 2} During the summer of 2001, Joyce Atkins listed her property at 6592 Wizard of Oz Way, Hillsboro, Ohio, with a realtor, Richard Shriver. After looking at the property, Saxon determined that he would like to purchase it. He contacted Mr. Shriver and made an offer on the property, which Mrs. Atkins accepted. The parties agreed to close on the property on August 28, 2001.
 {¶ 3} On the day of closing, the Atkinses and Saxon appeared at Mr. Shriver's office. All of the necessary documents had been prepared, including a closing statement and deed. According to the parties' agreement, Saxon was to pay $1,800 at the closing.[1] Of that $1,800, approximately $68.00 was to go to the Atkinses with the remainder going to Mr. Shriver to pay his costs. However, at the closing, which was held at 4:30 p.m., Saxon informed the Atkinses that he did not have the money because he was unable to make it to the bank prior to the closing. Instead, Saxon had with him several checks made payable to him in the amount of $1,600. He indicated that he intended to pay the $1,800 from the proceeds of those checks along with another check that he was to pick up the next day. Saxon informed Mr. Shriver that he would have the $1,800 the following day.
 {¶ 4} Mr. and Mrs. Atkins had traveled from West Portsmouth to appear at the closing, a drive of approximately two hours. Moreover, Mr. Atkins is confined to a wheelchair. Because of their situation, the Atkinses chose to sign all of the closing documents, including the deed to the real estate and the titles to a mobile home and camper situated on the real estate, while they were in Hillsboro. The parties agreed that Mr. Shriver would hold the documents until Saxon paid the $1,800. At that time, Mr. Shriver would record the deed and give Saxon the keys to the property.
 {¶ 5} According to Mr. Shriver, Saxon never brought him the $1,800 for the Atkins' property. According to Saxon, he gave Mr. Shriver $1,149 the day after the closing. Saxon testified that he and Mr. Shriver agreed that he could pay the remaining balance within the next month. Saxon stated that on September 28, 2001, he gave Mr. Shriver a check for $1,015. The check was drawn on the account of a third party and given to Saxon as payment for rent on another piece of property. The third party had post-dated the check to October 6, 2001, but Mr. Shriver cashed it before then, causing the check to bounce. When Mrs. Atkins later spoke to Mr. Shriver he indicated that he had received a check from Saxon but the check was for another piece of property Saxon was buying through him, not for her property.[2]
 {¶ 6} Sometime between the 29th and 31st of August, Saxon moved renters onto the property, collecting rent from them. In October 2001, Mrs. Atkins became concerned because she had not yet received her portion of the down payment or the first months payment for the property. While in Hillsboro, Mrs. Atkins stopped by her property on Wizard of Oz Way and discovered the renters living on the property. Mrs. Atkins contacted the Highland County Sheriff's Department.
 {¶ 7} On November 11, 2001, the Highland County Sheriff's Department filed theft charges against Saxon in Hillsboro Municipal Court. Saxon pled not guilty. After a bench trial, the court found Saxon guilty.
 {¶ 8} Under Anders v. California (1967), 386 U.S. 738,87 S.Ct. 1396, 18 L.Ed.2d 493, Saxon's appointed counsel advised this Court that following a thorough and conscientious review of the record, she could discern no prejudicial errors upon which an assignment of error may be predicated. Saxon's counsel has requested leave to withdraw and, in accordance with Anders, has accompanied her request with a brief referring to those portions of the record that might arguably support an appeal. Counsel has presented the following potential assignments of error: "1. The trial court erred in finding appellant Robert Saxon guilty of theft by deception in violation of ORC § 2913.02(A)(3) because the evidence was not sufficient as a matter of law to support a conviction. 2. The trial court erred in finding appellant Robert Saxon guilty of [theft by] deception in violation of ORC § 2913.02(A)(3) because such a finding was against the manifest weight of the evidence. 3. The trial court erred in exercising jurisdiction over this matter as the evidence tends to show that, pursuant to ORC § 2913.02(B)(2), jurisdiction properly lies in the Highland County Court of Common Pleas."
 {¶ 9} We note that Saxon was served with a copy of his appointed counsel's brief and given an opportunity to file his own supplemental brief in order to argue issues that were not raised by his counsel. Saxon has failed to avail himself of this opportunity.
 {¶ 10} This court must undertake a full examination of the proceedings to determine whether the appeal is wholly frivolous. Anders, supra. If we find only frivolous issues on appeal, then we may proceed to address the case on its merits without the assistance of counsel. Statev. Hart (Dec. 23, 1997), Athens App. No. 97CA18. However if we disagree with counsel and conclude there are meritorious issues for appeal, we must afford appellant the assistance of counsel. Anders, supra; see, also, Penson v. Ohio (1988), 488 U.S. 75, 109 S.Ct. 346,102 L.Ed.2d 300.
 {¶ 11} In her first proposed assignment of error, Saxon's counsel challenges the sufficiency of the evidence supporting Saxon's conviction. She argues the state failed to prove that Saxon knowingly obtained control over the property on Wizard of Oz Way through deception. She also contends the state failed to prove that Saxon acted with the purpose to deprive Mrs. Atkins of her property.
 {¶ 12} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citingJackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
 {¶ 13} The trial court convicted Saxon of theft in violation of R.C. 2913.02(A)(3), which provides: "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [b]y deception." Under R.C. 2901.22(B), "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2913.01(A) defines deception as "knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact."
 {¶ 14} The agreement between the Atkinses and Saxon provided that he would receive the deed and titles when he paid the down payment. Saxon does not dispute that he failed to tender the agreed upon down payment at the closing. He testified, however, that he gave Mr. Shriver $1,149 of the $1,800 down payment the day after the closing. When asked if he had receipts to evidence the payment, Saxon indicated that he did not. He testified that he did not have receipts from any of his deals with Mr. Shriver. Saxon also testified that when he met with Mr. Shriver the day after the closing, the two agreed that Saxon could pay the remainder of the down payment within the next month. According to Saxon, he did not receive the deed to the land or the title to the mobile home and camper at that time. Instead, Mr. Shriver indicated to Saxon that he felt more secure holding on to the deed and titles until Saxon paid the remaining balance of the down payment. Saxon also testified that he did not receive keys to the mobile home and camper. He testified, however, that he believed Mr. Shriver's office had misplaced the keys because this had happened on a previous occasion with another piece of property he had purchased through Mr. Shriver.
 {¶ 15} Sometime between the 29th and 31st of August, Saxon moved renters into the mobile home and camper. At that time he did not have the deed to the land or the title and keys to the mobile home and camper. However, Saxon testified that he believed he had the right to move renters onto the property because he had purchased the property.
 {¶ 16} Contrary to Saxon's testimony, Mr. Shriver testified that Saxon never paid him any portion of the down payment. Mr. Shriver testified that he called Saxon numerous times to explain the importance of Saxon paying the down payment in order to close the transaction. Despite his calls, Saxon never brought him the down payment.
 {¶ 17} Likewise, Mrs. Atkins testified that she never received any money from Saxon. According to Mrs. Atkins, when she contacted Mr. Shriver regarding her share of the down payment, Mr. Shriver informed her that Saxon had not paid the down payment. Mrs. Atkins testified that she went to Saxon's house on a number of occasions to find out what was going on with the sale of the property. On one such occasion, Saxon informed Mrs. Atkins that he had paid Mr. Shriver. Mrs. Atkins also testified that she did not receive the first monthly payment on the property, which was due on September 28, 2001. In October 2001, Mrs. Atkins went to check on the property and discovered the renters residing there. According to Mrs. Atkins, she did not receive any of the money Saxon collected from the renters.
 {¶ 18} Viewing the above evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could find the essential elements of theft proven beyond a reasonable doubt. Therefore, we conclude that an appeal based upon the sufficiency of the evidence argument would be wholly frivolous.
 {¶ 19} In her second proposed assignment of error, Saxon's counsel contends Saxon's conviction is against the manifest weight of the evidence.
 {¶ 20} The legal concepts of sufficiency and weight of the evidence are different. State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. Therefore, even though we have already addressed the sufficiency of the evidence, it is still necessary to consider the weight of the evidence because it is possible that the evidence may be legally sufficient to go to the jury, yet be so logically unpersuasive that it cannot support a conviction. SeeState v. Robinson (1955), 162 Ohio St. 486, 487, 124 N.E.2d 148.
 {¶ 21} Our function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. Thompkins, supra. In order to undertake this review, we must sit as a "thirteenth juror" and review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. Id., citing State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. If we find that the fact finder clearly lost its way, we must reverse the conviction and order a new trial. Id. We will not reverse a conviction so long as the state presented substantial evidence for a reasonable trier of fact to conclude that all the essential elements of the offense were established beyond a reasonable doubt. State v. Getsy, 84 Ohio St.3d 180, 193-94,1998-Ohio-533, 702 N.E.2d 866. We are also guided by the presumption that the trier of fact "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of proffered testimony." Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273.
 {¶ 22} The parties agreement provided that Saxon would receive the deed and titles when he paid the down payment of $1,800. At trial, Saxon testified that he was to receive the deed and titles at the closing. According to Mr. Shriver's testimony, Saxon never paid the down payment. Saxon's own testimony established that he had not paid the full down payment at the time he moved the renters onto the property. He testified that he paid Mr. Shriver $1,149 the day he moved the renters onto the property. According to his own testimony, he did not pay the remainder of the down payment until September 28, 2001. Despite not having paid the full down payment and not having the deed, titles, or keys, Saxon moved renters onto the property and began collecting rent from them. He did not send any of the rent money he collected to Mrs. Atkins.
 {¶ 23} Having reviewed the record, we cannot say that the trial court lost its way when it found Saxon guilty of theft in violation of R.C. 2913.02(A)(3). There exists substantial evidence upon which the trial court could reasonably conclude that all the essential elements of theft were established beyond a reasonable doubt. Therefore, we conclude that an appeal based upon a manifest weight of the evidence argument would be wholly frivolous.
 {¶ 24} In her third proposed assignment of error, Saxon's counsel challenges whether the Hillsboro Municipal Court had subject matter jurisdiction over Saxon's case. She contends that proper subject matter jurisdiction resided in the Highland County Court of Common Pleas rather than the Hillsboro Municipal Court. She argues the evidence indicates that the property Saxon allegedly deprived Mrs. Atkins of had a value greater than $500. Thus, under R.C. 2913.02(B)(2)[3], Saxon committed a felony. Counsel argues that the Hillsboro Municipal Court did not have jurisdiction over this case because Saxon committed a felony.
 {¶ 25} Subject matter jurisdiction refers to a court's power to hear and decide a particular case on its merits. BCL Enterprises, Inc.v. Ohio Dept. of Liquor Control, 77 Ohio St.3d 467, 469, 1997-Ohio-254,675 N.E.2d 1; Morrison v. Steiner (1972), 32 Ohio St.2d 86, 290 N.E.2d 841, paragraph one of the syllabus. A judgment rendered by a court lacking subject matter jurisdiction is void ab initio. Patton v. Diemer (1988),35 Ohio St.3d 68, 518 N.E.2d 941, paragraph three of the syllabus.
 {¶ 26} R.C. 1901.20(A)(1) provides that the municipal court has subject matter jurisdiction over "any misdemeanor committed within the limits of its territory." The complaint filed in this case did not allege that Saxon deprived Mrs. Atkins of property or services valued at $500 or more. Rather the complaint charged Saxon with petty theft, a misdemeanor in the first degree. Because the complaint charged Saxon with a misdemeanor, the municipal court had subject matter jurisdiction over his case.
 {¶ 27} Counsel's potential argument essentially challenges the decision to charge Saxon with a misdemeanor rather than a felony. However, the decision whether to prosecute and what charge to file is within the prosecutor's discretion. See State ex rel. Jones v. GarfieldHeights Municipal Court, 77 Ohio St.3d 447, 448, 1997-Ohio-256,674 N.E.2d 1381, citing Mootispaw v. Eckstein, 76 Ohio St.3d 383, 385,1996-Ohio-389, 667 N.E.2d 1197. Such decisions are not normally subject to judicial review. Id.
 {¶ 28} The complaint filed in the Hillsboro Municipal Court charged Saxon with petty theft, a misdemeanor of the first degree. Under R.C. 1901.20, the Hillsboro Municipal Court has subject matter jurisdiction over "any misdemeanor committed within the limits of its territory." Thus, we conclude that an appeal based on lack of subject matter jurisdiction would be wholly frivolous.
 {¶ 29} Having considered the foregoing "possible assignments of error" and having otherwise independently reviewed the record for any errors prejudicial to appellant's rights and finding none, we agree with counsel's assessment that no meritorious issues exist in this instant case upon which to predicate an appeal. We therefore grant counsel's motion to withdraw, find that this appeal is wholly frivolous pursuant toAnders, supra, and Penson, supra, and affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Hillsboro Municipal Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Evans, P.J. Kline, J.: Concur in Judgment and Opinion.
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.
[1] The parties' agreement provided that Saxon would purchase the lot, the mobile home and the camper for $27,000. Saxon would pay $1,800 of the $27,000 as a down payment at the closing. He would then make monthly payments of $511 until he satisfied the purchase price. Saxon was to pay the first monthly installment on September 28, 2001.
[2] According to Saxon, he and Mr. Shriver entered into three separate land deals during the summer of 2001.
[3] Under R.C. 2913.02(B)(2), a violation of R.C. 2913.02(A) is petty theft, a misdemeanor of the first degree, unless the value of the property or services stolen is greater than $500. If the value of the property or services stolen is $500 or more but less than $5,000, then a violation R.C. 2913.02(A) is theft, a felony of the fifth degree. If the value of the property or services stolen is $5,000 or more but less than $100,000, then a violation of R.C. 2913.02(A) is grand theft, a felony of the fourth degree. Finally, if the value of the property or services stolen $100,000 or more, a violation of R.C. 2913.02(A) is aggravated theft, a felony of the third degree.